Good morning. May it please the court. Michelle Swanson of the California Attorney General's Office appearing on behalf of Respondent Appellant, and I'd like to reserve three minutes for rebuttal. The magistrate judge in this case improperly defined clearly established law. Neither Loeffler nor Frye clearly established the reasonable counsel advice inquiry set nor has any other court besides the lower court in this case found such an inquiry to be clearly established Supreme Court law. Even Edwards himself never advocated that this inquiry was clearly established in either his state court proceedings or in his federal petition. And Ms. Swanson, by inquiry you mean whether he would have responded differently had he been given competent advice by counsel? Yes, the inquiry that a court must evaluate whether a theoretical competent counsel would have advised the defendant about various pros and cons or weaknesses and strengths of the evidence. Then what does it mean to have competent counsel if they're not giving competent advice? Well, the prejudice inquiry in Strickland looks to the actual deficient performance that was alleged by the defendant. It goes no further. So Strickland found that the prejudice inquiry looks at whether, but for counsel's ineffective performance, the outcome in that case of trial would have been different. Well, didn't she testify in her declaration or in court that she would have broken his arm to convince him that he had a six-year deal? That's correct, and the state court considered that. The state court considered the defendant's evidence. Strickland clearly establishes that it's the defendant's burden to show prejudice. And the state court heard his evidence. It heard his testimony. It heard his counsel's testimony. It heard his arguments that his counsel would have broken his arm to get him to take this plea. But it also had to consider the contemporaneous evidence surrounding what was going on at that time when that offer was made and whether that corroborated or undermined his testimony. And the state court was also able to observe both Mr. Edwards and his counsel, their demeanor, and judge their credibility, which the magistrate judge did not do in this case. So do you agree? I mean, so Strickland says we have to, for prejudice, there has to be a reasonable probability that the outcome would have been different, right? And that suggests we're sort of comparing two things, you know, what actually happened and what would have happened had there been non-deficient performance. Do you agree with that as a general statement of what we're looking at here? Yes. And so, you know, clearly not communicating a plea offer at all is deficient performance. But wouldn't it also be deficient performance to say, for a lawyer to say to his client or her client, you know, you have received a plea offer. Here it is. You know, good luck. I'm not going to tell you anything about it or trial or anything else. Like, you know, let me know what you want to do. That would be deficient, too, wouldn't it? Well, this report has clearly established that counsel must not only convey the plea, but they must convey the terms of that plea offer to the defendant. And they must accurately convey what those terms are. But the Supreme Court has not set forth any specific guidelines about what a counsel must say. How far do they have to go into the pros and cons? Do they have to do that? Do they have to evaluate all these various factors that the magistrate judge set out? Isn't it inherent in what they did say, though? They've said that competency can't just mean, you know, it's not just a word. Competence is competence. Competence has to mean providing competent advice. Why doesn't it mean just that? But this is not a competent advice case. This is a failure to convey case. And even in a competent advice case, like Loeffler, the United States Supreme Court did not look beyond the actual claim-deficient advice, the one single piece of advice the defendant claimed was deficient when deciding the prejudice inquiry. It went no further. It did not say, okay, so counsel said that as a matter of law, you can't be convicted. Now we're going to also consider, he would have advised you about, you know, the strength of the prosecution's case and, you know, whether the witnesses would be credible. Loeffler said nothing about that. And this is why clearly established law is very narrowly defined. The state courts are supposed to be given extreme deference on federal habeas. And if there's no Supreme Court case squarely addressing the issue or addressing the same facts as the state court, then the state court is entitled to conduct that inquiry as it sees  Well, Ms. Swanson, I mean, at bottom this case is about someone not getting a plea offer for a six-year sentence versus a possible exposure of 60 to life, which is a very stark difference obviously. And if I understand correctly, he may have already served three of those years in custody. So I guess the questioning that I and my colleagues have around it is, is it enough to convey the plea and not say anything more? Or if you read Loeffler and Fry together, should there be an expectation of the court inquiring into what kind of competent advice might have swayed him in determining whether there's reasonable probability that he may have taken the offer? It's up to the defendant to present that evidence to the court. The defendant knows best what would have swayed him to take an offer. And the defendant put on his evidence. And he said, he put on his trial counsel's testimony, and she said, we discussed before the first trial, we discussed the strengths and weaknesses of the case. I discussed to him the consequences of if he were convicted. We did all of these things. And she said, I would have broken his arm to get him to take this. And he said, see, she would have advised me to take this. He didn't dispute that he knew about the strengths and weaknesses and all of this other stuff. He never claimed, oh, well, if she would have advised me of that, she would have been deficient. No, he did not ever say, just because she failed to convey it, I guess the point here is, just because she failed to convey it does not mean she was, therefore, ineffective in any and all ways. That she would have been ineffective in giving him advice about that offer if she had conveyed it. That's, this is not, this is not an ineffective advice case. Counsel, I had hundreds of child pornography, rape cases. If any prosecutor came to me and said, take the deal, or your client is looking at life, I would have ran to the jail and talked to my client about that. How can you say that this was not clearly deficient and not communicating as more just as telling them, here's the deal? It's advising them what to do. That's what competent advice is. We're not talking about competent advice here. The claim deficient performance is that counsel failed to convey the plea. Fry says, we consider whether counsel had conveyed the plea that the defendant would have taken it. And that's all Fry says. Fry did not say, and as part of that inquiry, by the way, you have to consider what a theoretical, all the advice a theoretical competent counsel would have given. It does not go that far. In fact, it said, it's expressly said, we're not going to say what other factors might go into a prejudice inquiry, because we don't have to go there here, because in that case, the defendant accepted a plea on less favorable terms, and that was the end of the prejudice inquiry. To define clearly established law, the Supreme Court has to find on facts virtually indistinguishable from the case at hand that a particular legal principle applies. And Fry did not say that, and even Loeffler did not say that. Loeffler did not consider what a theoretical counsel would have advised. They considered whether if the defendant's counsel had given the competent advice, which was that he could, in fact, be convicted of assault as a matter of law, then what the defendant would have done. Loeffler says in the context of pleas, a defendant must show that the outcome of the plea process would have been different with competent advice. Competent advice. That's exactly what it says. But it does not — it's not as expansive as Edwards says it is, or the magistrate judge said it is. What it — you have to also consider the issue before the Supreme Court and how it analyzed it. And the issue was not whether counsel gave various pros and cons and how extensive the advice was. It was a single piece of advice. And that was, again, that he told his client that, as a matter of law, he couldn't be convicted if I think that the crime was assault. And that's all Loeffler meant by competent advice. It meant the actual advice that is alleged to be deficient. It didn't say, then the court can open it up and consider all these other — all this other advice totally disconnected to what the defendant is — is his burden and what he's claiming under the prejudice prong. So just so that I understand, you're saying that the Supreme Court has not told us what competent advice is, and therefore we have to defer to the State's evaluation of that on that point? Yes. It has not said that counsel would be deficient if they did not advise their client about these various factors that the magistrate judge went through in his analysis. I understand your point. Thank you. And presumably — I mean, I take it your view is that a competent counsel could have advised the defendant against taking this plea, right? I mean, there are things to be said on both sides, right? Well, the State court found that, based on the circumstances where the defendant had already had a favorable result after his first trial, and even before that trial, the defendant and his counsel viewed the prosecution case as weak, and they were supremely confident in their case. Under those circumstances, you know, he would not have taken this plea. So that's what the State court found, and that was reasonable. So I think, no, under the circumstances of this case, I don't think that you can view that, you know, he would have taken this offer. You wanted to save some time for rebuttal? Yes, I did. Thank you. Okay. Mr. Vorobiev? Good morning. Your Honors, may it please the Court, Gene Vorobiev on behalf of Mr. Edwards. So, before I begin, is there any aspect you would like me to start with? I do. Let me start off with what Judge Miller started off with, or was ending with. Suppose his counsel had conveyed an offer and said, don't take it. Would that have been ineffective, given? Actually, I think it would have been. Why? Judge Miller's why? Because the first trial ended in an uncertainty. Well, it ended with what they later came to find out was a 10-2 vote for acquittal on one count, and a 7-5 vote for acquittal on another. Right, I understand. And you have an individual who has professed his innocence the entire time throughout the case, and you have some indicia that maybe he might be able to beat the charges. So, why is it so clear-cut that it would have been ineffective for the counsel to tell him don't take the plea? Well, Your Honor, two things. A, I don't necessarily think you have to resolve that question to affirm the district court's analysis and conclusion, and B, given the risks the retrial posed and the disparity between the offer, which is very generous, and what he was facing, I think anything but a strong advice to at least consider the offer seriously, talking to his family, would have been incompetent. Let me go to your first question, because this, I think, goes to me, to the heart of this, is if we're not sure what the competent advice would be, then how can it be that the district is taking it and considering what would have happened or not? Well, just to make clear, that's not what I'm saying. I'm saying you don't necessarily have to definitively resolve it, but I think on this record, any advice short of you have to seriously, seriously consider it would have been ineffective assessment of counsel. I want to make sure I'm clear about this. That's my position. Again, you have to compare the risks and whatever favorable indicia of a potential retrial you think there are. To go back to your point about, well, there was a favorable split. In the second trial, that means essentially nothing. The second jury isn't going to know about it. You're not guaranteed the same jury composition. You're not guaranteed the same evidence. In fact, in this case, counsel knew that the evidence was going to be different, because not only was the defense calling you expert witness, but the prosecution was calling Dr. California. You know who he is. You know what type of evidence he would present. I would almost guarantee if I was advising this client, it would have been admissible. It hasn't. You were also going to get a new judge, right? I'm sorry? You were also going to get a new judge. Right. That's right. You're going to get a different set of rulings. Essentially, it's a do-over. I suppose it's a matter of glass half-full, half-empty, but if I was advising this client, and I think any constitutionally competent counsel, if they were advising them, would have said, look, there is a significant risk that if you go to retrial, the outcome may be very different as compared to if you accept this deal, you can go home in a couple of years. Because by my back-of-the-napkin calculation, he served two years with the credit that he was entitled to at that point. Let me ask this. If we agree with you that the clearly established rule is a defendant must show the outcome of the plea process would have been different with competent advice from Lafler, how would the evidentiary hearing have been conducted differently? What would have changed? Well, I can tell you what would have changed. You couldn't do what the trial court did and say, you know, Ms. Morton, you're saying you would have broken his back. You would have advised him of the risks of jury trial. But I don't believe that this is what you would have done because I'm looking at your email as a prosecutor, and you said 99% sure he's not taking it. So I'm crediting that, and I'm not crediting your evidentiary hearing testimony, which is what happened here. So when my – But I guess my question is if it's supposed to be assumed that the court takes into consideration what competent advice would have produced, and he's already testifying that he would have taken the offer even with the existing record, what would have changed? Would it have been him saying, I really would have taken the offer now? What would change is the analysis about his amenability to taking the deal with the jury. But he was already amenable. He already testified in the evidentiary hearing that he would have taken the offer. Right, but his counsel's advice was not being used to support his amenability or to say, you know, even though competent advice would have been given, he would have just rejected it out of hand. The competent counsel advice was considered only in the sense of we don't believe Ms. Warren would have given that advice. That's the only consideration that happened in this case, and that's not what – Maybe I'm not being clear, but I guess the evidentiary hearing proceeded as if what would he have done had the offer been conveyed? Right. And he testified, I would have taken it, and I would have understood – I understood the risks of the sexually violent predator statute and the risks of trial and lifetime registration, but nevertheless, I would have taken it. I guess what I'm struggling with is trying to understand what the court should have done differently in bringing into this thought process what competent advice would have – Well, his case would have been a lot more persuasive because you would have considered his amenability to taking the plea in light of the fact he would have been advised of the risk of going to retrial versus the benefit of basically rolling the dice. I mean, I think that's basically a key factor because we're saying that he wouldn't have taken the deal. We're not considering what a competent counsel would have advised. Instead, we're essentially saying that his attorney's actual advice, what we think the attorney would have given him, actually supports this idea that, oh, he would have just refused to take any deal, whereas in an evidentiary hearing conducted under clearly established Supreme Court law, you would have had to have – it would have been unreasonable to discount the possibility that once the defendant hears how generous of an offer is being made and how stark the consequences may be if he's convicted, the conclusions about whether he's likely or not likely to take the deal would be very different. Because you have to remember, in some sense, in this situation, we're trying to predict what would happen in an alternative universe where the offer is conveyed. And this is an issue where it's one of the few issues that the defendant isn't entrusted to himself to decide whether to take the deal or not. So this is one of those areas where it's critical for him to be informed of risks and rewards of accepting or rejecting the deal. So if, at an evidentiary hearing, the state court actually considers the likelihood of the impact of counsel's advice on whether Edwards takes this offer or not, it's very different. So, for example – But the premise of that is that the only advice that could have been given consistent with the Sixth Amendment standard of competence would be to take the agreement – Or strongly consider it. So I would – basically, the recommendation would be to give it a strong consideration. Because no attorney can force the defendant to take a plea. And how – I mean, I guess I'm wondering – I mean, this is sort of the same – a few times already – but how does clearly established federal law compel the state court to take that view of what the advice would have been? Because there are a lot of Strickland cases that say, you know, we give a lot of – counsel has pretty broad leeway to make strategic judgments. Why is it so obvious that a strategic – a reasonable strategic judgment couldn't have been – you know, there are risks and benefits on both sides. But, you know, we had a favorable result once before. And if you are really saying that you didn't do it, like, that's a choice you could make. Well, a couple of things. I think – I would urge the court to look at McCoy v. Louisiana, which we cited in the 28-J letter. I think that's the latest example. Although I think it's just a logical extension, like Lafleur and Fry are, of the Strickland principles. But in McCoy, the Supreme Court was dealing with a related issue of what the defendant's counsel's obligations are about whether the defendant should or should not agree to continue to maintain their innocence or concede guilt and basically throw themselves at the mercy of the court. And even in that situation, the Supreme Court says counsel's obligation is to develop a trial strategy, discuss pros and cons with the client and make a recommendation. I think this is analogous. And contrary to what my colleague said, it does not require a precise factual case on point. Can I ask this? I mean, should Mr. Edwards, since he bore the burden of proving this, should he have called independent counsel to come in and testify as to what competent advice should have been given to him in this instance? I think he could have, but I don't think it's required. In fact, I think he has made an argument even in the state court relying on Ms. Morton's evidentiary hearing testimony, explaining that she would have told him about the risks of the jury trial and, of course, adding the bit about breaking his arm, about taking the deal. But he was relying on- Well, Ms. Watson says, look, the state court considered that. In fact, counsel testified that he should have broken his arm. They considered it. Why do we then get a second crack at it? Well, because they didn't. Because basically they considered only in the sense that they heard it, and then they said, we don't believe that you would have given that advice. The Supreme Court doesn't say, we consider what the result would have been incompetent counsel advice if we believe the competent advice would have been given. That's not what it says. It says, we consider what the outcome would have been had competent advice been given. That's assumed. So it's not a credibility question, whether Morton would give that advice or not. I think part of the difficulty with your argument, and Ms. Watson points this out, is that neither in Fry or Lafleur did the Supreme Court engage in any hypothetical analysis of what you're saying is supposed to be clearly established federal law. So how do we glean from those cases that the courts should engage in this sort of counterfactual analysis of what competent advice should be when they didn't undertake it themselves? Well, even at the most general level, again, the Supreme Court cases do say you have to discuss the terms of the offer, and at least in general, pros and cons of accepting the offer or not accepting the offer. In this case, I think the analysis is simple. You don't have to compare precisely what the ABA guidelines say, whether this was compliant to a fine detail or not. Look, you got a six-year offer or a life-term exposure. You could, if you want to, try it again, but there is a significant risk. And by the way, California law and the Supreme Court law allows you to take a null plea that does not require you to admit factual guilt. Basically, the Alford plea, which is available in California, is basically I'm not admitting guilt, but I'm saying it because there is enough evidence to convict me. If there is a favorable plea offer, I'm taking it. So to the extent there is some kind of a philosophical difficulty, you can enter that type of plea. So even at the most general level, even if you read the Supreme Court cases very narrowly, to say that all counsel had to do is discuss pros and cons and risks and rewards, even if you can just consider that along with the disparity between the offer and what the life-term exposure is and what the life of a convicted sex offender for life in prison would be. And would you view, let's suppose that had come up in the evidentiary hearing and the trial court still determined that he would not have taken the offer, is it your view that that would be an unreasonable... On this record, yes. On this record, yes, and let me unpack that why. So there's no... As long as someone had given him the pros and cons of going to trial, then on these facts, there's only one outcome that is reasonable in this case. I believe so. Because of the exposure, the disparity? Because of the exposure, because of the uncertainty of a second trial. Because the prosecution had... In fact, the counsel knew that Dr. Rukiza was going to be called. You know, I've practiced in California for almost 25 years. In these types of cases, even if it's a child's word against the defendant, you call in the child sexual abuse accommodation syndrome expert, and it invariably gets over any difficulty the state would have with, for example, a child not remembering certain details, being inconsistent, because Dr. Rukiza's testimony... Again, he's a known commodity. It's not an if. Could you let me know... I just want to confirm this. He was also naive to the ways of how plea offers are... Yes, his first rodeo, essentially. It's his first rodeo. He, in fact, thought that it was the state who had to initiate the process for plea offers. Yes, you are. And for worse or worse, I have dealt with Mr. Everett for three years as district court habeas counsel, now as appellate counsel. He's pretty differential. He's not sophisticated. So it doesn't strike me... Again, for worse or worse, obviously. It doesn't strike me as very incredible that he would not know that it's not on him to initiate the process. And the salient fact here, he's never refused an offer like... We have examples of cases where defendants refuse offers, favorable offers, or say, there is no way I will ever take the offer. The Jones v. Wood case, which the state has cited, there was no plea offer rejection. But that was a defendant who even got to this court, joining his argument about a plea with an argument, I'm factually innocent. My counsel should have done more to expose that somebody else has committed the crime. Now, that's a different record. I just have one final question. Sorry. I realize I'm over my time. You indicated that he had, at this point, spent over two years in jail. What are the good-time rules for a prisoner under his charge? And would a competent counsel know the good-time rules? Yes. I think, at the time, the good-time credits would have been raised to 15%, because 288A would be a violent felony in California under 667.5C. So, he would have had to... He's limited... So, in addition to the actual credit, he gets good-time up to 15%. So, again, my back-of-the-napkin calculations, because I don't think he would have had to serve... He would have had credit for about three years total. So, he's got about, I would say, around three years to serve. So, he would have been getting out of jail soon. So, an attorney would have told him, you have either three years to serve or life. Right. Do you want to take that gamble? Yeah. Okay. Which was never communicated to him. Right. You don't have to go through each and every detail that the magistrate went through, but just the exposure, the risks of the retrial... Yes. I think any advice other than strongly recommending consideration of the taking of the deal would be ineffective. Thank you. Thank you. Going to the last point... So, let's assume that I'm correct and that there is no clearly established law with respect to this Competent Counsel Advice Inquiry. So, then, let's go and look at the state court decision and whether that was reasonable. And Edwards is focusing on the offer, the six years. But what he's not focusing on is that it came with the risk of a potential indeterminate civil commitment as a sexually violent predator. And you have to look at the contemporaneous circumstances. What Edwards and his counsel were thinking at that time, what things looked like to them. We're not looking at it now, after he's already been tried, convicted, and sentenced to a life term. Now, of course, he would want that offer. But back then, he had already come off a trial that was in his favor. This prosecutor, two weeks before trial, is offering him this deal. They already thought the prosecution's case was weak. Now they thought it was really weak, and it was falling apart. They didn't even think that they would maybe even go to retrial. The defendant was adamant that he was innocent. He found the child molestation charges disgusting. He would not admit to something he wouldn't do. He testified to that. The court that held the evidentiary hearing... But, counsel, let me stop you on that point. You know how many times criminal defendants say that to their attorney, experienced attorneys, competent counsel? Like, about a thousand times. So, hearing that as a competent counsel, would that competent counsel still nonetheless relate to them what they should do in that circumstance? No, I just want to point out, counsel in this case was not a new attorney. She was not someone that had never tried a child molestation case. She was a 31-year experienced attorney who had tried the gambit of cases, including murder cases. She was not... That didn't communicate an offer, counsel. Well, you know, that's what the state court assumed. But there was evidence. She had first submitted a declaration saying she did convey the offer, and he rejected it. But then she went back on that, the evidentiary hearing. So the state court went ahead with the evidentiary hearing testimony and accepted that as true. But, my point is, is that she was not so naive about criminal defendants. But she believed him, and his expert witness believed him. His mother believed him. He maintained that innocence from the beginning, all the way through the evidentiary hearing. He still said he was innocent, and he testified that he was confident at retrial. He was confident he was going to win. He was facing a decision. Go to retrial, and when he thought that prosecution case was weak, and he would get at least one juror that would hang that jury, okay? Versus clinging to something he found disgusting that would require lifetime registration and might expose him to an indeterminate term. Versus, I think I'm going to get off completely. And that's what we have to do. And that's what the state court did. They looked at what he was thinking and what he was feeling at that time. And I would submit that the state court's decision was reasonable, and I would ask this court to reverse the district court's judgment and deny the petition for writ of habeas corpus. Thank you, counsel. Thank you. Thank both counsel for their helpful arguments. The case is submitted, and that concludes our calendar for the day.
judges: MILLER, SANCHEZ, UNKNOWN